RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 09 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SUZANNAH LYNN SAIAH,<br><br>Plaintiff,<br><br>v.<br><br>EnhanceIT, LLC; Mobile Apps Enterprises, LLC; Brighter Brain, LLC; Techfield, LLC, Exchange Hub, LLC, Vikram (Vik) Thadani; Olga Alexsandrovna Bogachek; Laurance Darnell Richard; Christa Lynn Vickery, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.: **1:20-CV-4591**<br><br>**Complaint and Jury Demand** |

## PRELIMINARY STATEMENT

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Family and Medical Leave Act of 1993 (FMLA), as amended, 29 U.S.C. § 2601, et seq. Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, The Civil Rights Act of 1871, 42 U.S.C. §1983, Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C § 12101, et seq, and the Constitution of the United States.

2. Plaintiff Suzannah Lynn Saiah experienced escalating and unrelenting discrimination, harassment, hostile work environment, and disparate treatment based on disability (various medical conditions) when she was wrongfully terminated/constructively discharged after notifying Defendants of her disabilities and then being denied her FMLA rights, accommodations of PTO, and being constructively discharged/wrongfully terminated by Defendants EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC as more specifically set forth

1

below:

## PARTIES

3. Plaintiff Suzannah Lynn Saiah ("Plaintiff") was employed by the Defendants as a Communications Specialist from December 12, 2016 through January 17, 2020.

4. At all times relevant to this complaint and upon information and belief, Ms. Saiah's job duties as Communications Specialist encompassed work across the following four related, and intertwined companies – EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC; Exchange Hub, LLC, and Techfield, LLC.

5. Defendants EnhanceIT, LLC, is a domestic Limited Liability Company registered to do business in the State of Georgia on August 30, 2019, and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

6. Mobile Apps Enterprises, LLC, is a foreign Limited Liability Company registered in the state of Georgia on June 2, 2014 whose domestic registration is in the state of Delaware and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

7. Brighter Brain, LLC, is a domestic limited liability company registered in the state of Georgia on January 1, 2009, and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

8. Exchange Hub, LLC is a foreign limited liability company registered in Georgia on June 2, 2014 who domestic registration is out of the state of Delaware and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

9. Techfield, LLC, is a foreign limited liability company registered in Georgia on June 2,

2014, whose domestic registration is in the state of Delaware, and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

10. The following Defendants ("Individual Defendants") were employees of EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and/or Techfield, LLC:

   a. Vik Thadani, at all relevant times, upon information and belief, was the owner of, chief executive officer of and/or managing member of EnhanceIT, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Mr. Thadani is sued in his individual capacity.

   b. Defendant Olga Aleksandrovna Bogachek, at all relevant times, upon information and belief, was Director of Human Resources for EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Ms. Bogachek is sued in her individual capacity.

   c. Defendant Laurence Richard was, at all relevant times, the staff accountant with EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Mr. Laurence is sued in his individual capacity.

   d. Defendant Christa Lynn Vickery, at all times relevant, upon information and belief was the Sales Director and Plaintiff's immediate supervisor at EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Ms. Vickery is sued in her individual capacity.

11. Defendant Vik Thadani is and was, at all times relevant, the owner of, CEO of, and/or managing member of EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Upon information and belief, Mr. Thadani has the authority to hire, fire, enforce, make and changes to company policy and to effectuate the requested injunctive relief, including but not limited to Plaintiff's request for damages.

## PROCEDURAL HISTORY

12. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII, the Civil Rights Act of 1964, as amended, Violations of Title I of the Americans with Disability Act of 1990, as amended, Defendants, and all of them, based on sex (Female), disability (violation of FMLA rights and denial of accommodations), retaliation, and EPA attached hereto as Exhibit A.

13. On or about August 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue, attached hereto as Exhibit B.

14. Plaintiff took all necessary steps to exhaust her administrative remedies.

15. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

17. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the unlawful employment practices is alleged to have been committed within the United States District Court for the Northern District of Georgia.

18. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the United States District Court for the Northern District of Georgia.

## FACTS

19. Plaintiff Suzannah Lynn Saiah is a female citizen of the United States.

20. Ms. Saiah is a resident of Marietta, Georgia, County of Cobb.

21. Plaintiff is a disabled individual as defined by the ADA.

22. Defendant is an employer subject to and required to adhere to federal laws as and for the Family Medical and Leave Act.

### Employment with Defendant

23. On or about Dec. 12, 2016, Ms. Saiah was hired by Defendant Brighter Brain, LLC.

24. Ms. Saiah's initial job title was that of Technical Communications Specialist.

25. Ms. Saiah was a salaried employee whose beginning salary was $55,000.00 a year, and whose ending salary was $68,000.00 per year.

26. Ms. Saiah performed the duties as director of technical communications without the pay and benefits and worked directly with the directors of all other departments in all of Defendants' companies and used the title of Director of Technical Communications in all her company communications.

27. Ms. Saiah reported directly to Ms. Christa Vickery Director of Sales.

28. Ms. Saiah was employed by the Defendant as a Communications Specialist from December 12, 2016 through April 22, 2019 by Brighter Brain, LLC.

29. On April 22, 2019, Plaintiff entered into a Separation Agreement with Brighter Brain, LLC, and was moved to a position as Communications Specialist under the subsidiary company of Mobile Apps Enterprises, LLC on April 22, 2019.

30. Shortly after April 22, 2019, Brighter Brain, LLC transferred all its staff payroll under the umbrella of Mobile Apps Enterprises, LLC.

31. At all times relevant to this complaint and upon information and belief, Ms. Saiah's job duties as Communications Specialist/Director of Technical Communications encompassed work across the following five related and intertwined companies – EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC; Exchange Hub, LLC, and Techfield, LLC.

32. Complainant worked as a Communications Specialist for Mobile Apps from April 22, 2019 through January 21, 2020 when she was wrongfully terminated under the pretext of

"job abandonment."

33. On or about August 30, 2019, EnhanceIT, LLC was created as a Georgia Domestic Limited Liability Company and commenced operating Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC under the umbrella of EnhanceIT, LLC.

34. On or about January 13, 2020, Plaintiff informed Defendant Ms. Bogachek, Director of Human Resources, she suffered from several long-term medical conditions – a heart condition—Sick Sinus Syndrome for which she had a pacemaker implanted in 2003 and replaced in 2009 and 2016; asthma, for which she was diagnosed at age 21; Generalized Anxiety Disorder, Panic Disorder, and Depression; and laryngeal-pharyngeal reflux.

35. On January 16, 2020 Plaintiff filed a Notice of Intent via EnhanceIT's PayCor system for 11 days off due to not feeling well, being stressed from job demands that was exasperating her medical conditions due to the unrelenting work demands. The days of request included the workdays off of January 17, 20-24, and 27-31, with Plaintiff returning to work on February 1, 2020.

36. Defendants' companies do not have paid sick leave/time.

37. Defendants' companies have a Paid Time Off ("PTO") policy in lieu of sick time and vacation.

38. On January 16, 2020, when filing her Notice of Intent to take PTO, Plaintiff had 106 hours of PTO on the books and available and due to her.

39. In an email to Ms. Vickery and Ms. Bogachek at 8:00 a.m. January 17, 2020, Plaintiff stated she would be checking in with colleagues and make herself available for business continuation during her absence, not to perform work, but to answer questions so work could continue unimpeded.

40. At 10:12 a.m. on January 17, 2020, Plaintiff attempted to log onto her work accounts to check in with colleagues and discovered she had been locked out of all systems.

41. Plaintiff tried to contact her immediate supervisor, Ms. Vickery by telephone at 10:31 a.m. on January 17, 2020 via telephone. Ms. Vickery did not answer the telephone. Ms. Vickery did not return Plaintiff's

6

call.

42. At 10:48 a.m. on January 17, 2020, Defendants' general counsel Mr. Dec left a message on Plaintiff's personal telephone and stated: her "office is cleaned out and to call him." Plaintiff did not return the call.

43. At no time was Plaintiff notified by anyone from Defendants' companies, any of them, including but not limited to Ms. Vickery, Ms. Bogachek, nor Mr. Dec that her request for PTO was denied, nor did they contact her about her rights under FMLA.

44. On January 20, 2020 at 11:48 a.m., Mr. Eric J. Dec, Defendant's legal counsel, left Plaintiff a voice message that stated Plaintiff had "no PTO" and accused Plaintiff of job abandonment despite Plaintiff submitting her Notice of Intent to take PTO due to illness. Plaintiff's pay stub from Paycor dated January 10, 2020 clearly indicates Plaintiff had 106 hours of PTO accrued and available.

45. On January 22, 2020 at 8:29 a.m. Plaintiff received a threatening email from Mr. Dec. threatening Plaintiff with criminal charges and lying for not returning company equipment (a small notebook computer worth approximately $75.00). Defendants were in possession of a computer system worth $50,000.00 purchase by Defendant and set up in a company computer lab since the owner refused to provide equipment that her job demanded to effectively perform training.

46. On January 24, 2020 via U.S. Mail received a Separation Notice dated January 21, 2020.

47. On January 28, 2020 at 4:47 p.m. Plaintiff received an email from Paycor stating "Laurance Richard denied your time off request (PTO) for 88 hours from January 17, 2020 to January 31, 2020. Reach out to your manager to learn more. This was Plaintiff's only notification that her PTO request had been denied.

48. On January 30, 2020 at 8-830 a.m., Plaintiff was in contact with Georgette Sando Parker, front desk administrator, who arranged to meet Plaintiff outside Defendants' property to return the company notebook computer and her to receive the return of her $50,000.00 in computer equipment. Plaintiff took to the meeting a receipt to be signed to ensure there was evidence of the return of each parties' respective property. Ms. Parker met Plaintiff with Laurence Richard, would not sign the receipt and took the receipt inside the building

7

for Mr. Dec to sign who refused. Mr. Richard presented Plaintiff with a document to sign confirming she returned company equipment which Plaintiff refused to sign. Plaintiff left without returning Defendants' equipment.

49. On January 30, 2020 between 11:00-11:30 a.m. Plaintiff shipped to Defendants its notebook computer via FedEx with signature required.

50. Defendants have not returned Plaintiff's personal property (computer equipment valued at $50,000.00) nor have they made any good faith effort to return it or even acknowledge they are in possession of the property.

51. At no time relevant to this complaint did Ms. Bogachek nor Mr. Dec. contact Plaintiff about her request for PTO or to discuss of any of her rights and the companies' responsibilities under the Family Medical and Leave Act.

52. At no time relevant to this complaint did Ms. Bogachek nor Mr. Dec. contact Plaintiff about her PTO or to relay to her rights and the companies' responsibilities under the Family Medical Leave Act.

53. Plaintiff was not paid her final paycheck nor her accrued PTO until she involved Georgia's Wage & Hour Division. Defendant ultimately paid Plaintiff $899.48 for her last days work but never paid her for her accrued PTO.

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 2000e, *et seq.*
### Hostile Work Environment/Disparate Treatment Because of Disability
### (Against ALL Defendants)

54. Plaintiff incorporates by reference the foregoing paragraphs 1-53 as if fully set forth herein.

55. Plaintiff is a member of a protected class with regard to disability.

56. Plaintiff is and was qualified to perform the job for which she was employed by Defendants and was able to perform the duties with or without accommodations.

57. After Plaintiff's disability (various medical conditions) was disclosed to Ms. Bogachek, on

8

January 13, 2020 Defendants immediately instituted a campaign of harassment, hostile work environment, disparate treatment, and discrimination against Plaintiff on the basis of disability denying her accommodations of PTO, denying her FMLA rights, and constructively discharged/wrongfully terminating her.

58. This illegal adverse employment action was willful, malicious, severe, and pervasive and culminated with Plaintiff's illegal constructive discharge/wrongful termination by Defendants.

59. Plaintiff was targeted for harassment, a hostile work environment, and disparate treatment by Defendants' managers, employees, and agents because of her disability.

60. The discriminatory acts were egregious, numerous and concentrated, and formed part of the same hostile work environment, harassment, and disparate treatment as detailed herein.

61. Defendants' illegal discriminatory acts were unwelcomed to Plaintiff.

62. Defendants' illegal discriminatory acts interfered with Plaintiff's ability to perform her job duties with Defendants.

63. As a result of Defendants' discriminatory actions, hostile work environment, and disparate Plaintiff was illegally terminated, she felt humiliation and despair as well as suffered an exacerbation of her medical conditions due to the stress as a direct an proximate result of the harassment, hostile work environment, and wrongful termination.

64. The hostile, harassing and disparate treatment and actions of Plaintiff by Defendants' was willful, malicious, and wonton.

65. All of the events contributing to this hostile work environment occurred within the required 300-day period prior to Plaintiff's EEOC charge.

66. Plaintiff perceived the adverse action to be abusive or hostile.

67. A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

68. Defendants' actions occurred because of Plaintiff's disability (multiple medical conditions).

69. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, disparate treatment, and retaliation.

### COUNT 2
### 42 U.S.C. § 2000e, *et seq.*
### Discrimination and Termination Because of Disability
### (Against ALL Defendants)

70. Plaintiff incorporates by reference the foregoing paragraphs 1-69 as if fully set forth herein.

71. Plaintiff is a member of a protected class with regard to disability.

72. Plaintiff is and was qualified to perform the job for which she was employed by Defendants and was able to perform the duties with or without accommodations.

73. After Plaintiff's disability (various medical conditions) was disclosed to Ms. Bogachek on January 13, 2020.

74. Defendants wrongfully terminated Plaintiff under the guise/pretext of "job abandonment."

75. This illegal adverse employment action was willful, malicious, severe, and pervasive and culminated with Plaintiff's illegal constructive discharge/wrongful termination by Defendants.

76. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

## COUNT 3
## 29 U.S.C. § 2601, et seq.
## Violation of the Family Medical Leave Act
## (Against ALL Defendants)

77. Plaintiff incorporates by reference the foregoing paragraphs 1-76 as if fully set forth herein.

78. The effect of Defendants' acts when Plaintiff informed them of her disabilities was to deprive Plaintiff of her rights under the Family and Medical Leave Acts rights and their actions were hostile, harassing and retaliatory for informing Defendants of her disability, all in violation of Title VII and Title I of the Civil Rights Act of 1991.

79. By notifying Defendants' of her disability, Defendants' discriminatory practices, hostile work environment, and disparate treatment described herein and opposing said practices and hostile work environment directed at herself, Plaintiff engaged in activities protected by Title VII.

80. Plaintiff's protected class was known to Defendants, and all of them. Following and because of Plaintiff's Title VII protected class, Plaintiff was harassed, subjected to a hostile work environment and disparate treatment and subjected to a tangible and adverse employment actions—denial of accommodations (PTO) denial of FMLA rights, and termination.

81. The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination.

82. By engaging in the conduct described above Defendants' intentionally targeted Plaintiff with malice or reckless indifference to Plaintiff's federally protected class and rights to oppose practices that are prohibited by Title VII.

83. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

## COUNT 5
## 42 U.S.C. § 12101
## Violations of Title I of the Americans with Disabilities Act of 1990
## (Against ALL Defendants)

84. Plaintiff incorporates by reference the foregoing paragraphs 1-83 as if fully set forth herein.

85. Plaintiff is a member of a protected class with regard to disability.

86. Plaintiff is and was qualified to perform the job for which she was employed by Defendants and was able to perform the duties with or without accommodations.

87. After Plaintiff's disability (various medical conditions) was disclosed to Ms. Bogachek on January 13, 2020.

88. Defendants terminated Plaintiff under the guise/pretext of "job abandonment."

89. Title I of the ADA prohibits, in its relevant parts:

> "private employers, State and local governments, employment agencies and labor unions from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment. The ADA covers employers with 15 or more employees, including State and local governments."

90. On information and belief, no other employee of Defendant similarly situated to Plaintiff has been subjected to the differential treatment and adverse actions Plaintiff received as described in the preceding paragraphs.

91. As a result of Plaintiff's disability Defendant intentionally targeted Plaintiff for differential treatment and adverse employment actions.

92. The differential treatment of, and adverse employment actions taken against, Plaintiff as described in the preceding paragraphs, were intentional, malicious and arbitrary, motivated by nefarious and discriminatory purpose, and were not rationally related to any governmental interest.

93. The reasons given by Defendant for these actions against Plaintiff were a pretext for

12

discrimination based on disability

94. The differential treatment of, and adverse actions taken against, Plaintiff were undertaken by Defendants' owners, employees, and agents with the final authority to establish policy with respect to the actions ordered, or had been delegated the same, and the differential treatment and misconduct constituted the policy and widespread practice of the Defendant.

95. The Defendant and its agents and employees acted under color of state law and knew or reasonably should have known that their conduct would violate Plaintiff's constitutional rights.

96. The Defendant's conduct was a cause in fact of Plaintiff's differential treatment and the adverse actions taken against her.

97. As a result of the above-described wrongful conduct, Plaintiff's constitutional rights were violated.

98. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

## MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS

99. Plaintiff incorporates by reference all previous paragraphs 1-98 as if fully set forth herein.

100. Plaintiff is mandatorily entitled to recover their attorneys' fees and costs pursuant to provisions of Title VII.

101. Plaintiff is entitled to an award of attorney fees pursuant to the Equal Access to Justice Act, codified at 5 U.S.C. § 504, *et seq.*, 28 U.S.C. § 2412 *et seq.*, and 28 U.S.C. § 2412 *et seq.*

## JURY DEMAND

102. Plaintiff hereby demands a trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the acts, practices, and omissions complained of herein are unlawful and violate Title VII and the United States Constitution;

B. Permanently enjoin Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in the unlawful conduct of discriminating against employees who are disabled.

C. Order Defendants to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for employees who are Disabled, and which eradicate the effects of Defendants' past and present unlawful employment practices;

D. Order other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

E. Direct Defendants to pay for past and future compensatory pecuniary and non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

F. Direct Defendants to pay Plaintiff front and back pay, in an amount to be determined at trial;

G. Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law; and

H. Award such additional relief as justice may require.

Dated: November 06, 2020
Respectfully Submitted,

**Susie (Suzannah) Lynn Saiah**

/s/ Suzannah Saiah
Suzannah Saiah
2895 Leafwood Dr. SE Marietta, GA 30067
Tele: 770.733.3988
Email: Suzannah.Saiah@outlook.co

*Plaintiff In Pro Se*