FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
JAN 27 2021
JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA

SUZANNAH LYNN SAIAH,

Plaintiff,

v.

ENHANCEIT, LLC; MOBILE APPS
ENTERPRISES, LLC; BRIGHTER
BRAIN, LLC; TECHFIELD, LLC,
EXCHANGE HUB, LLC, VIK THADANI;
SIDDHARTH AMIN, OLGA
ALEKSANDROVNA BOGACHEK;
LAURENCE RICHARD; CHRISTA LYNN
VICKERY, AND DOES 1-10, Inclusive,

Defendants.

Case No.: _____

**Complaint and
Jury Demand**

## PRELIMINARY STATEMENT

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Family and Medical Leave Act of 1993 (FMLA), as amended, 29 U.S.C. § 2601, et seq. Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, The Civil Rights Act of 1871, 42 U.S.C. §1983, Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C § 12101, et seq, The Fair Labor Standards Act of 1938 29 U.S.C. § 203, and the Constitution of the United States.

2. Plaintiff Suzannah Lynn Saiah experienced escalating and unrelenting hostility, harassment, retaliation, and disparate treatment when she was wrongfully terminated/constructively discharged in violation of FMLA rights and in violation of the company's own policies.

3. Upon wrongful termination the company withheld pay for time worked, and withheld

1

compensation for unused PTO which plaintiff had not been allowed to take.

## PARTIES

1. **Plaintiff Suzannah Lynn Saiah** ("Plaintiff") was employed by the Defendants with the official title on paper of "Communications Specialist" even though she was hired to start the Technical Communications department with the title Director of Technical Communication, and she had successfully worked into this role. She began employment on December 12, 2016 and her last day was effectively January 17, 2020, as she was prevented from working after this (Exhibit D).

At all times relevant to this complaint and upon information and belief, Ms. Saiah's job duties as encompassed work across the following four related, and intertwined companies – EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC; Exchange Hub, LLC, and Techfield, LLC.

*Heretofore, Ms Saiah, will be known as "The Plaintiff".*


**The following Defendants ("The Company") were employees of EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and/or Techfield, LLC:**

2. **Defendant EnhanceIT, LLC,** is a domestic Limited Liability Company registered to do business in the State of Georgia on August 30, 2019, and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

3. **Defendant Mobile Apps Enterprises, LLC** is a foreign Limited Liability Company registered in the state of Georgia on June 2, 2014 whose domestic registration is in the state of Delaware and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

2

4. **Defendant Brighter Brain, LLC**, is a domestic limited liability company registered in the state of Georgia on January 1, 2009 and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

5. **Defendant Exchange Hub, LLC** is a foreign limited liability company registered in Georgia on June 2, 2014 who domestic registration is out of the state of Delaware and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

6. **Defendant Techfield, LLC** is a foreign limited liability company registered in Georgia on June 2, 2014, whose domestic registration is in the state of Delaware, and is an employer as that term is defined by Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all times relevant herein, Defendants employed more than 50 employees in their combined entities.

*All Companies are owned by Vik Thadani, and Plaintiff worked for a contiguous entity throughout the duration although the company operated under different names and changed names. All company entities the defendant worked for in this role will be heretofore known as "The Company".*

**The following Defendants ("Individual Defendants") were employees of EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and/or Techfield, LLC:**

7. **Defendant, Vik Thadani,** at all relevant times, upon information and belief, was the owner of, chief executive officer of and/or managing member of EnhanceIT, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Upon information and belief, Mr. Thadani has the authority to hire, fire, enforce, make and changes to company policy and to effectuate the requested injunctive relief, including but not limited to Plaintiff's request for damages. Mr. Thadani is sued in his individual capacity.

8. **Defendant Siddharth Amin**, VP of Strategic Operations, at all relevant times, upon information and belief, was acting in capacity as co-decision maker and effecting all executive decisions of EnhanceIT. Mr. Amin is sued in his individual capacity.

9. **Defendant Olga Aleksandrovna Bogachek**, at all relevant times, upon information and belief, was Director of Human Resources for EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Ms. Bogachek is sued in her individual capacity.

10. **Defendant Christa Lynn Vickery**, at all times relevant, upon information and belief was the Sales Director and Plaintiff's immediate supervisor at EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC. Ms. Vickery is sued in her individual capacity.

## PROCEDURAL HISTORY

11. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII, the Civil Rights Act of 1964, as amended, Violations of Title I of the Americans with Disability Act of 1990, as amended, Defendants, and all of them, based on sex (Female), disability (violation of FMLA rights and denial of accommodations), retaliation, and EPA attached hereto as Exhibit A.

12. On or about August 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue, attached hereto as Exhibit B.

13. Plaintiff took all necessary steps to exhaust her administrative remedies.

14. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act and pursuant to 28 U.S.C. § 1337 because the

action is based on a federal statute regulating commerce.

16. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the unlawful employment practices is alleged to have been committed within the United States District Court for the Northern District of Georgia.

17. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the United States District Court for the Northern District of Georgia.

## FACTS

18. Plaintiff Suzannah Lynn Saiah is a female citizen of the United States.

19. Ms. Saiah is a resident of Marietta, Georgia, County of Cobb.

20. Plaintiff is a disabled individual as defined by the ADA, as he ADA defines a disability as a physical or mental impairment that substantially limits one or more major life activities, which includes working, concentrating and processing information.
While her health in general does not affect her ability to do her job, the toxic and stressful environment over years took a toll on her heart condition and asthma, anxiety disorder and depression, all of which she is being treated for by medical professionals.

21. Defendant, "The Company," is an employer subject to and required to adhere to Federal laws as and for the Family Medical and Leave Act and EEOC Act against retaliation of an employee by an employer.

22. Based on conversations in which the Plaintiff divulged her health concerns and working conditions which were or would ill affect her, management (Christa Vickery, Technical Managers, and H.R. Manager Bogachek were aware that she has chronic and critical health issues for which she was under care and were being managed. Particularly Plaintiff has a brief conversation with H.R. Manager Bogachek approximately 1 month prior to her wrongful

5

termination about a disabled employee whom Plaintiff supervised, and Plaintiff asked Bogachek if she needed to formally disclose, file any paperwork, about her chronic conditions in order to be legally sound. She was told, "no", she did not.

**Employment with Defendant**

23. On or about Dec. 12, 2016, Ms. Saiah was hired by Defendant "The Company", Brighter Brain, LLC.

24. Ms. Saiah was hired to start a Technical Communications department, becoming the Director of Technical Communications, with the initial job title Technical Communications Specialist. She successfully turned-around online marketing performance and created and implemented communication training programs for consultant trainees and consultants and devised and implemented marketing initiatives. Her performance and contributions to the success of the company were well known and she was spoken highly of with many employees and managers relying on her.

25. Ms. Saiah was a salaried employee whose beginning salary was $55,000.00 a year plus monthly performance bonuses, salary to increase 10% per year, and whose ending salary was $68,000.00 per year with no bonuses and no change in title although she had fulfilled all requirements and was in actually doing that job.

26. Ms. Saiah reported directly to Ms. Christa Vickery Director of Sales, and worked closely with all technical managers, consultant mangers, the Technical VP and Marketing VP.

27. Ms. Saiah was employed by the Defendant as a Communications Specialist from December 12, 2016 through April 22, 2019 by Brighter Brain, LLC.

28. On April 22, 2019, Plaintiff entered into a Separation Agreement with Brighter Brain, LLC, and was moved to a position as Communications Specialist under the subsidiary company of Mobile Apps Enterprises, LLC on April 22, 2019.

29. Shortly after April 22, 2019, Brighter Brain, LLC transferred all its staff payroll under the umbrella of Mobile Apps Enterprises, LLC.

30. At all times relevant to this complaint and upon information and belief, Ms. Saiah's job

6

duties as Communications Specialist/Director of Technical Communications encompassed work across the following five related and intertwined companies – EnhanceIT, LLC, Mobile Apps Enterprises, LLC, Brighter Brain, LLC; Exchange Hub, LLC, and Techfield, LLC.

31. Complainant worked as a Communications Specialist performing all duties of Technical Communication Director for Mobile Apps from April 22, 2019 through January 21, 2020 when she was wrongfully terminated under the pretext of "job abandonment."

32. On or about August 30, 2019, EnhanceIT, LLC was created as a Georgia Domestic Limited Liability Company and commenced operating Mobile Apps Enterprises, LLC, Brighter Brain, LLC, Exchange Hub, LLC, and Techfield, LLC under the umbrella of EnhanceIT, LLC.

33. On January 16, 2020 Plaintiff filed a Notice of Intent (Exhibit E) via EnhanceIT's PayCor system for 11 days off due to not feeling well, being stressed from job demands that was exasperating her medical conditions due to the unrelenting work demands. The days of request included the workdays off of January 17, 20-24, and 27-31, with Plaintiff returning to work on February 1, 2020.

34. Defendants' companies do not have paid sick leave/time.

35. Defendants' companies have a Paid Time Off ("PTO") policy in lieu of sick time and vacation.

36. Companies cannot require a Doctor's note for PTO, and this time the company would not accept one, but did repeatedly insist on Plaintiff divulging to them the precise details of her medical condition and history, in violation of privacy laws.

37. On January 16, 2020, when filing her Notice of Intent (Exhibit E) to take PTO, Plaintiff had 106 hours of PTO on the books and available and due to her.

38. In an email to Ms. Vickery and Ms. Bogachek at 8:00 a.m. January 17, 2020, and all other managers with whom she worked directly, Plaintiff stated she would be checking in with colleagues and make herself available for business continuation during her absence, not to perform work, but to answer questions so work could continue unimpeded (Exhibit

7

E- Notice of Intent).

39. At 10:12 a.m. on January 17, 2020, Plaintiff attempted to log onto her work accounts to check in with colleagues and discovered she had been locked out of all systems. (Exhibit D)

40. Plaintiff tried to contact her immediate supervisor, Ms. Vickery by telephone at 10:31 a.m. on January 17, 2020 via telephone. Ms. Vickery would not take nor return Plaintiff's phone calls. Plaintiff was unable to email as she has been shut out of all systems (Exhibit D).

41. At 10:48 a.m. on January 17, 2020, Defendants' general counsel Mr. Dec left a message on Plaintiff's personal telephone and stated: her "office is cleaned out and to call him." While it was true that Plaintiff had removed all Christmas decorations and décor from her office as it was mid-January and she was taking leave, this was her right and was not indicative any intention to abandon her job.

42. At no time was Plaintiff notified by anyone from Defendants' companies, any of them, including but not limited to Ms. Vickery, Ms. Bogachek, nor Mr. Dec that her request for PTO was denied, nor did they contact her about her rights under FMLA.

43. On January 20, 2020 at 11:48 a.m., Mr. Eric J. Dec, Defendant's legal counsel, left Plaintiff a voice message that stated Plaintiff had "no PTO" (Exhibit I - Handbook, PTO section, page 23, my PTO is retained because I was not fired for cause as The Company's accusation of job abandonment is false) and accused Plaintiff of job abandonment despite Plaintiff submitting her Notice of Intent (Exhibit E) to take PTO due to illness. Plaintiff's pay stub from Paycor dated January 10, 2020 clearly indicates Plaintiff had 106 hours of PTO accrued and available (Exhibit I).

44. On January 22, 2020 at 8:29 a.m. Plaintiff received a threatening email from Mr. Dec. threatening Plaintiff with criminal charges and lying for not returning company equipment (a small notebook computer worth approximately $250 - $500.00 (Exhibit F)(Voice mail recording are available if desired)

45. On January 24, 2020 via U.S. Mail, the Plaintiff received a Separation Notice (Exhibit L) dated January 21, 2020 and delivered Jan 24th. Between Jan 17 and Jan 24 Plaintiff was on leave (Exhibit E) and 2) was unable to work remotely because they had wrongfully shut her out of all systems (Exhibit D), preventing her from returning to work, yet falsely and hostilely accused Plaintiff of "job abandonment"

8

(Exhibit E- Notice of Intent) and this was their "justification" for withholding pay (Exhibit H) and refusing to pay her compensation for PTO (Exhibit G) to which she was entitled based on company policy (Exhibit I), and by precedent set by The Company of paying out PTO to employees it was terminating.

46. On January 28, 2020 at 4:47 p.m. Plaintiff received an email from Paycor stating "Laurance Richard denied your time off request (PTO) for 88 hours from January 17, 2020 to January 31, 2020. Reach out to your manager to learn more." (Exhibit C) This was Plaintiff's only notification that her PTO request had been denied – almost two weeks too late. Also, Mr. Richards was not the Plaintiff's manager, in fact not even a manager and should not have been doing this. Also denial would be plausible for vacation, but Plaintiff made it clear that she MUST take days off now because she was too ill to work.

47. Given that PTO was not allowed for her illness, FMLA should have kicked in, yet they denied her FMLA rights.

48. On January 30, 2020 at 8-830 a.m., Plaintiff was in contact with Georgette Sando Parker, front desk administrator, who arranged to meet Plaintiff outside Defendants' property to return the company notebook computer (Exhibit F). She requested a signed receipt which company representatives/attorney Dec, refused to sign, so she left with the notebook computer and immediately sent it Federal Express with signed delivery receipt (Exhibit F).

49. At no time relevant to this complaint did Ms. Bogachek, Ms. Vickery, nor Mr. Dec. contact Plaintiff about her request for PTO or to discuss of any of her rights and the companies' responsibilities under the Family Medical and Leave Act.

50. At no time relevant to this complaint did Ms. Bogachek nor Mr. Dec. contact Plaintiff about her PTO or to relay to her rights and the companies' responsibilities under the Family Medical Leave Act.

51. Attorney Dec for The Company repeatedly harassed the Plaintiff with messages threatening criminal charges and refusing to acknowledge that she had given proper

9

notice (Exhibit E) of leave or any notice at all, accusing Plaintiff of leaving without notice (Exhibit E), even though he had copies of all of her documentation.

52. Plaintiff was not paid her final paycheck nor her accrued PTO until she involved Georgia's Wage & Hour Division. Defendant ultimately paid Plaintiff $899.48 for her last days work but never paid her for her accrued PTO, which is her right under company policy and by clear precedent set by The Company. The $899.48 was submitted as a cash sum with no accounting for withholding and it was not properly paid through payroll account as it should have been, causing an accounting and tax issue for The Plaintiff to deal with.

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 2000e, *et seq.*
### Hostile Work Environment/Disparate Treatment Because of Disability
(Against ALL Defendants: The Company: Brighter Brain, Exchange Hub, Techfield, EnhanceIT, Mobile Apps Company; Individuals: Vik Thadani, Siddharth Amin, Christa Vickery, Olga Bogachek, )

53. Plaintiff incorporates by reference the foregoing paragraphs 1-51 as if fully set forth herein.

54. Plaintiff is a member of a protected class with regard to disability as described under the act as chronic serious health condition under medical management.

55. Plaintiff is and was qualified to perform the job for which she was employed by Defendants and was able to perform the duties with or without accommodations.

56. Plaintiff was targeted for harassment, a hostile work environment, and disparate treatment by Defendants' managers, employees, and agents because of her disability which they used to take advantage of her, wrongfully terminating her without notice, severance, compensation for her accrued PTO, and without paying her wages for work done.

57. The cash sum which she received due to the involvement of State Wage and Hour was far past the legally required time frame a company has to pay a terminated employee

final wages.

58. The sum paid for wages in arrears was done incorrectly and The Company has yet to make this right.

59. The discriminatory acts were egregious, numerous and concentrated, and formed part of the same hostile work environment, harassment, and disparate treatment as detailed herein.

60. The Company; Defendants, did disseminate hostile, malicious, accusatory, and inflammatory lies pertaining to the character of the Plaintiff, and wrongfully alleging uncertain but defamatory actions by the plaintiff, harming her professional reputation and maligning her character. a) Response drafted by attorney and mailed to Plaintiff was hostile and lambasted Plaintiff's character and alleged false allegations though it does not state what Plaintiff is being accused of (Exhibit N- Cease & Desist). This was an uncalled for, unprovoked and baseless assassination of the character of Plaintiff. There are also reports from witnesses which can be obtained by deposition.

61. Defendants' illegal discriminatory acts were unwelcomed to Plaintiff.

62. Defendants' illegal discriminatory acts interfered with Plaintiff's ability to perform her job duties with Defendants.

63. As a result of Defendants' discriminatory actions, hostile work environment, and disparate Plaintiff was illegally terminated, she felt humiliation and despair as well as suffered an exacerbation of her medical conditions due to the stress as a direct an proximate result of the harassment, hostile work environment, and wrongful termination. She required medical care by multiple medical providers with high frequency, medication and monitoring due to the illness, highly exacerbated by the hostility and hardship perpetrated upon the Plaintiff by the defendants; The Company, and one year later she is still under medical care, and recovering.

64. <u>But for the hostile actions of The Company,</u> the defendant, though ill, was able to receive care, medication, and work remotely from her home office, and would have done so. That The Company denied her this opportunity, denied her pay, compensation, and severance, and the hostile harassment causing a great worsening of her conditions is entirely the fault of The Company, and he plight and suffering would not have been nearly so great if they has dealt

11

with humanity and decency. But for the hostility of the company toward her, she would not have been dealt nearly so hard a blow to her health but could have recovered with a little rest and reduced schedule for a while. Given the hostile attacks by The Company, she has been completely down for a year and is still recovering.

65. The hostile, harassing and disparate treatment and actions of Plaintiff by Defendants' was willful, malicious, and wonton.

66. All of the events contributing to this hostile work environment occurred within the required 300-day period prior to Plaintiff's EEOC charge.

67. Plaintiff perceived the adverse action to be abusive or hostile.

68. A reasonable person in the Plaintiff's circumstances would consider the working environment to be abusive or hostile.

69. Defendants' actions occurred because of Plaintiff's disability (multiple medical conditions), taking advantage of her weakness and inability to defend herself.

70. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, disparate treatment, and retaliation.

## COUNT 2
## 42 U.S.C. § 2000e, *et seq.*
**Discrimination and Termination Because of Disability (Against ALL Defendants: The Company: Brighter Brain, Exchange Hub, Techfield, EnhanceIT, Mobile Apps Company; Individuals: Vik Thadani, Siddharth Amin, Christa Vickery, Olga Bogachek, )**

71. Plaintiff incorporates by reference the foregoing paragraphs 1-69 as if fully set forth herein.

72. Plaintiff is a member of a protected class with regard to disability.

73. Plaintiff is and was qualified to perform the job for which she was employed by

12

Defendants and was able to perform the duties with or without accommodations.

74. After Plaintiff's disability (various medical conditions) was disclosed to Ms. Bogachek, Ms. Vickery, Ms. Repas, and technical managers.

75. Defendants wrongfully terminated Plaintiff under the guise/pretext of "job abandonment." After they deliberately and willfully prevented her from performing her job (Exhibit D), and prevented her from communication with management (Exhibit D).

76. This illegal adverse employment action was willful, malicious, severe, and pervasive and culminated with Plaintiff's illegal constructive discharge/wrongful termination by Defendants.

77. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

### COUNT 3
### 29 U.S.C. § 2601, et seq.
### Violation of the Family Medical Leave Act
### (Against ALL Defendants: The Company: Brighter Brain, Exchange Hub, Techfield, EnhanceIT, Mobile Apps Company; Individuals: Vik Thadani, Siddharth Amin, Christa Vickery, Olga Bogachek, )

78. Plaintiff incorporates by reference the foregoing paragraphs 1-76 as if fully set forth herein.

79. The effect of Defendants' acts of requesting medical time off was to deprive Plaintiff of her rights under the Family and Medical Leave Acts rights and their actions were hostile, harassing and retaliatory for informing Defendants of her disability, all in violation of Title VII and Title I of the Civil Rights Act of 1991.

80. By notifying Defendants' of her disability, and by requesting time off stating she was

very ill, Defendants' discriminatory practices, hostile work environment, and disparate treatment described herein and opposing said practices and hostile work environment directed at herself, Plaintiff engaged in activities protected by Title VII.

81. Plaintiff's protected class was known to Defendants, and all of them. Following and because of Plaintiff's Title VII protected class, Plaintiff was harassed, subjected to a hostile work environment and disparate treatment and subjected to a tangible and adverse employment actions—denial of accommodations (PTO) denial of FMLA rights, and termination.

82. The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination.

83. By engaging in the conduct described above Defendants' intentionally targeted Plaintiff with malice or reckless indifference to Plaintiff's federally protected class and rights to oppose practices that are prohibited by Title VII.

84. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

### COUNT 5
### 42 U.S.C. § 12101
**Violations of Title I of the Americans with Disabilities Act of 1990**
(Against ALL Defendants: The Company: Brighter
Brain, Exchange Hub, Techfield, EnhanceIT, Mobile
Apps Company; Individuals: Vik Thadani, Siddharth
Amin, Christa Vickery, Olga Bogachek, )

85. Plaintiff incorporates by reference the foregoing paragraphs 1-83 as if fully set forth herein.

86. Plaintiff is a member of a protected class with regard to disability.

87. Plaintiff is and was qualified to perform the job for which she was employed by Defendants and was able to perform the duties with or without accommodations.

88. After Plaintiff's disability (various medical conditions) was disclosed and Plaintiff requisitioned time off stating health issues; Defendants failed to deny, locked her out (Exhibit D) and prevented her from doing her job (Exhibit D), and then terminated Plaintiff under the guise/pretext of "job abandonment". (Exhibit E – Notice of Intent)

89. Title I of the ADA prohibits, in its relevant parts:

> "private employers, State and local governments, employment agencies and labor unions from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment. The ADA covers employers with 15 or more employees, including State and local governments."

90. On information and belief, no other employee of Defendant similarly situated to Plaintiff has been subjected to the differential treatment and adverse actions Plaintiff received as described in the preceding paragraphs.

91. As a result of Plaintiff's disability Defendant intentionally targeted Plaintiff for differential treatment and adverse employment actions.

92. The differential treatment of, and adverse employment actions taken against, Plaintiff as described in the preceding paragraphs, were intentional, malicious and arbitrary, motivated by nefarious and discriminatory purpose, and were not rationally related to any governmental interest.

93. The reasons given by Defendant for these actions against Plaintiff were a pretext for discrimination based on disability

94. The differential treatment of, and adverse actions taken against, Plaintiff were undertaken by Defendants' owners, employees, and agents with the final authority to establish policy with respect to the actions ordered, or had been delegated the same, and the differential

treatment and misconduct constituted the policy and widespread practice of the Defendant.

95. The Defendant and its agents and employees acted under color of state law and knew or reasonably should have known that their conduct would violate Plaintiff's constitutional rights.

96. The Defendant's conduct was a cause in fact of Plaintiff's differential treatment and the adverse actions taken against her.

97. As a result of the above-described wrongful conduct, Plaintiff's constitutional rights were violated.

98. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, damage to her health, medical expenses, and other pecuniary and non- pecuniary losses, which damages would not have occurred but for Defendants' unlawful adverse employment actions, hostile work environment, and retaliation.

## MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS

99. Plaintiff incorporates by reference all previous paragraphs 1-98 as if fully set forth herein.

100. Plaintiff is mandatorily entitled to recover their attorneys' fees, legal fees and all costs pursuant to provisions of Title VII.

101. Plaintiff is entitled to an award of attorney fees and legal fees pursuant to the Equal Access to Justice Act, codified at 5 U.S.C. § 504, *et seq.*, 28 U.S.C. § 2412 *et seq.*, and 28 U.S.C. § 2412 *et seq.*

## JURY DEMAND

102. Plaintiff hereby demands a trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:
   A. Direct Defendants to pay Plaintiff front and back pay:

<u>Plaintiff was due wages/salary and PTO in the amount of $3,888.59</u>
**Breakdown**

| | |
|---|---|
| Wage | 1307.69 |
| PTO | 3465.38 |
| Amount Charged Plaintiff to get the $899 from Defendant | 15 |
| Subtotal | 4788.07 |
| Cash Amount Paid to Plaintiff in arrears | -899.48 |
| Total Balance Due for Wages and PTO | 3888.59 |

B. Award Plaintiff's costs for consultations totaling $500
C. Award 1 year salary ($68,000) as severance as Plaintiff has been out of work and ill for the term of this year due to Plaintiff's actions
D. Award such additional relief of $1,000 per month from Jan 17, 2020 until this matter is resolved or as justice may deem humane for frequent medical care, pain and suffering, and damage to character and reputation.
E. Direct Defendants to pay for past and future compensatory pecuniary and non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial.

Dated: January 26, 2021

Respectfully Submitted,
SUZANNAH SAIAH

/s/ Suzannah Saiah
Suzannah Saiah
2895 Leafwood Dr. SE
Marietta, GA 30067
Tele: 770.733.3988
Email: suzannah.saiah@outlook.com

*Plaintiff In Pro Se*